UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JEFFREY SCOTT HIERS,

    Plaintiff,

v.                                  Case No:   6:17-cv-189-Orl-DNF

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff, Jeffrey Scott Hiers, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A.  Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B. Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform his past relevant work, then he will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C. Procedural History

Plaintiff protectively filed applications for DIB and SSI on August 25, 2009, alleging a disability onset date of December 31, 2004. (Tr. 295, 302, 322). Plaintiff's applications were denied initially on February 22, 2010, and upon reconsideration on August 18, 2010. (Tr. 175-77, 179-81, 188-89, 195-96). Plaintiff requested a hearing and, on January 20, 2012, an administrative hearing was held before Administrative Law Judge Denise Pasvantis ("the ALJ"). (Tr. 115-47). On May 11, 2012, the ALJ entered a decision finding that Plaintiff was not disabled. (Tr. 152-69). Plaintiff filed a request for review which the Appeals Council granted on August 7, 2013. (Tr. 170-74).

On June 30, 2015, a second hearing was held before the ALJ, who again entered a decision finding Plaintiff not disabled on February 29, 2016. (Tr. 19, 22-70). Plaintiff requested review of the decision and on December 5, 2016, the Appeals Council denied Plaintiff's request for review. Plaintiff initiated this action by filing a Complaint (Doc. 1) on February 3, 2017.

### D. Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 31, 2004, the alleged onset date. (Tr. 25). At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of

the lumbar spine with L5-S1 herniated nucleus pulposus; chronic obstructive pulmonary disease (COPD) from tobacco abuse with mild pectus excavatum within normal variance. (Tr. 28). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 28).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform <u>light work as defined in 20 CFR 404.1567(b) and 416.967(b)</u> except he can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk for 30 minutes at a time without interruption and up to four hours in an eight-hour workday; he can sit for up to one hour at a time without interruption and four hours total in an eight-hour workday. He must have a sit and stand opinion that allows him to stand and shift position every hour of sitting for one to two minutes to relieve pain and discomfort. He can never climb ladders, ropes or scaffolds. He can occasionally climb ramps and stairs, stoop or bend, kneel, crouch, and crawl or squat. He must avoid even moderate exposure to extreme heat and cold; atmospheric conditions/irritants, including fumes, odors, dust and gases; and work hazards, including working near unprotected heights and open machinery.

(Tr. 29) (emphasis in original). At step four, the ALJ found that Plaintiff is unable to perform his past relevant work as an irrigation service technician. (Tr. 69).

At step five, the ALJ found that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 69). Relying on the testimony of a vocational expert, the ALJ found that Plaintiff could perform such jobs as assembler small parts, ticket marker merchant, and "delivery, light, unskilled." (Tr. 70). The ALJ concluded that Plaintiff had not been under a disability from December 31, 2004, the alleged onset date, through the date of the decision, February 29, 2016. (Tr. 70).

## II. Analysis

Plaintiff raises two issues on appeal: (1) whether the ALJ erred by refusing to submit Plaintiff's written questions to Joseph Mignogna, M.D., the consultative examiner, and refusing to allow Plaintiff to cross-examine Dr. Mignogna in a supplemental hearing; and (2) whether the ALJ erred by improperly weighing the medical opinion evidence. The Court will address each issue in turn.

### a. Whether the ALJ erred by refusing to submit Plaintiff's written questions to Joseph Mignogna, M.D., the consultative examiner, and refusing to allow Plaintiff to cross-examine Dr. Mignogna in a supplemental hearing.

Plaintiff argues that his right to procedural due process was violated by the ALJ's refusal to allow Dr. Mignogna to be questioned and by the ALJ's decision to reject Plaintiff's request for a supplemental hearing in which to cross-examine Dr. Mignogna. (Doc. 24 p. 22-23). According to Plaintiff, after the first hearing on January 20, 2012 (Tr. 115), the ALJ sent Plaintiff to Dr. Mignogna for a consultative examination. (Tr. 638-51). On March 1, 2012, the ALJ sent Dr. Mignogna's medical opinion to Plaintiff's counsel with instructions that he could submit written questions to Dr. Mignogna. (Tr. 401). Plaintiff's counsel prepared 7 additional questions for Dr. Mignogna. (Tr. 404-05). The ALJ refused to submit the questions to Dr. Mignogna explaining that since Dr. Mignogna was a consultative examiner, the ALJ would not pose the questions. (Tr. 410). Plaintiff's counsel sent a written argument to the ALJ that HALLEX I-2-7-30 is violated if a Plaintiff is not provided an opportunity to cross-examine a consulting physician with post-hearing evidence. Plaintiff's counsel requested a supplemental hearing and a subpoena for Dr. Mignogna to appear so that he could be cross-examined. Plaintiff's counsel pointed out that Dr. Mignogna's opinion contradicted the restrictions provided by Plaintiff's treating neurologist Dr. Weiss. (Tr. 411). The ALJ denied Plaintiff's request for a subpoena of Dr. Mignogna (Tr. 415) and

for a supplemental hearing (Tr. 417). In the order remanding the case, the Appeals Council held the ALJ needed to give further consideration to Dr. Mignogna's opinion which it pointed out was more restrictive than the limitations in the assessed RFC. (Tr. 171).

In response, Defendant argues that the any claim of prejudice caused by the ALJ's decision not to allow Plaintiff to submit interrogatories to Dr. Mignogna or to hold a supplemental hearing was rendered moot by the Appeals Council when it vacated the ALJ's first decision and the ALJ held a second decision and issued a new decision. (Doc. 24 p. 24). Defendant notes that after the remand and before the second administrative hearing, Plaintiff's counsel submitted a prehearing brief and additional medical evidence to the ALJ, but did not mention the need to question Dr. Mignogna. (Doc. 24 p. 25).

The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). The determination of whether cross-examination is warranted appears to be within the discretion of the ALJ. *See* 20 C.F.R. §§ 404.950(d)(1), 416.1450(d)(1) (providing, "[w]hen it is reasonably necessary for the full presentation of a case, an administrative law judge or a member of the Appeals Council may, on his or her own initiative or at the request of a party, issue subpoenas for the appearance and testimony of witnesses . . . ."); *Demenech v. Sec'y of Dep't of Health and Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (assuming, without deciding, that ALJ has discretion to determine whether cross-examination is warranted). The Eleventh Circuit has stated "that where the ALJ substantially relies upon a post-hearing medical report that directly contradicts the medical evidence that supports the claimant's contentions, cross-examination is of extraordinary utility." *Demenech*, 913 F.2d at 885. However, cross-examination will not be

required in every case. "Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334.

In this case, Plaintiff has failed to show that his due process rights were violated by the ALJ's failure to deliver interrogatories to Dr. Mignogna or to hold a second administrative hearing to allow him to be cross-examined. As Defendant notes, before the ALJ issued her second unfavorable decision on February 29, 2016, the ALJ held a second hearing, at which Plaintiff, a VE, and Dr. Rivero, a medical expert, testified. (Tr. 19-114). Plaintiff's attorney was given the opportunity to cross-examine the medical expert the medical expert about the consultative reports in evidence, including the report of Dr. Mignogna. (Tr. 102-06). Plaintiff's attorney did not mention the need to question Dr. Mignogna in his prehearing brief submitted before the second administrative hearing or with his request for Appeals Council review of the ALJ's 2016 decision (Tr. 12-18, 437-46).

Dr. Mignogna's report was not post-hearing evidence with respect to the second hearing, at which a medical expert was available for cross-examination, and Plaintiff had the same opportunity to challenge Dr. Mignogna's report as he did the rest of the evidence, including the reports of two other examining physicians. Thus, even if the ALJ violated the HALLEX before the case was remanded, Plaintiff's due process rights were not violated.

### b. Whether the ALJ erred by improperly weighing the medical opinion evidence.

Plaintiff argues that the ALJ's RFC finding conflicts with the medical opinion evidence. Specifically, Plaintiff argues that the ALJ erred by according only "little weight" to the opinion of treating neurologist, Gary Weiss, M.D. (Doc. 24 p. 29). Plaintiff contends that the reasons provided by the ALJ for rejecting Dr. Weiss's opinion are not supported by substantial evidence. (Doc. 24 p. 30-34). Further, Plaintiff argues that the ALJ's RFC finding conflicted with Dr.

Mignogna's opinion concerning Plaintiff's usage of a cane for ambulation and inability to walk a block at a reasonable pace on rough or uneven surfaces. (Doc. 24 p. 34).

In response, Defendant argues that the ALJ thoroughly analyzed the medical record and opinions of Dr. Weiss and properly accorded the opinions little weight. (Doc. 24 p. 36-47). In addition, Defendant argues that the ALJ carefully analyzed the other medical opinions of record and specifically addressed Plaintiff's contention that he required the use of a cane for ambulation. (Doc. 24 p. 47-48).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Social Security,* 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has held that good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical

records." *Id.* Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

In this case, the Court finds no error in the ALJ's treatment of the medical opinion evidence. In her decision, the ALJ conducted an extremely thorough review of the medical record and opinions. For example, the ALJ devoted over three pages of her decision to a discussion of Dr. Weiss's opinions. (Tr. 65-68). The ALJ noted that Dr. Weiss treated Plaintiff from November 2007 to June 2009, saw Plaintiff for an evaluation in preparation for his disability hearing in April 2014, and treated him again in December 2014 and February 2015. (Tr. 65, 457-78, 668-71, 739-48). The ALJ noted that Dr. Weiss offered two opinions as to Plaintiff's physical RFC, one in February 2012 and the second in June 2015. (Tr. 65-67, 634-37, 750-53). After summarizing Dr. Weiss's medical records and opinions, the ALJ provided good reasons, supported by substantial evidence, for according "little weight" to the opinions. (Tr. 65-68).

As the ALJ discussed, when Dr. Weiss completed a physical capacities questionnaire in February 2012, two and a half years had passed since he last treated Plaintiff in June 2009. (Tr. 65, 457-78, 634-37). Dr. Weiss's February 2012 opinion included limitations of lifting and carrying no more than 5 to 10 pounds, standing and walking less than 1 hour in an 8-hour workday, sitting less than 1 hour in an 8-hour workday, never performing most postural maneuvers but occasionally balancing, never using his upper extremities, and restrictions on all environmental conditions. (Tr. 65-66, 634-37). Dr. Weiss opined that Plaintiff "likely" was permanently and totally disabled and could only work "2-3 hours per day." (Tr. 66, 634-37). In support of his opinion, Dr. Weiss cited "low back pain" and to the 2007 MRI report. (Tr. 66, 634-37).

In assessing Dr. Weiss's opinions, the ALJ noted that Dr. Weiss's one-and-a-half-year treatment history with Plaintiff at the time of the opinion weighed in favor of affording the opinion controlling weight but found that the February 2012 opinion was not well-supported by Dr. Weiss's notes and inconsistent with the substantial evidence of record. (Tr. 66). The ALJ pointed out that Dr. Weiss's opinion failed to cite to any abnormal neurological examination findings, and his records that predated the February 2012 opinion did not show any abnormal neurological examination findings as well. (Tr. 66, 457-78, 634-37). The ALJ also noted that Dr. Weiss failed to explain his opinion that Plaintiff had limitations on use of his upper extremities or how his back impairment related to these alleged limitations. (Tr. 66, 457-78, 634-37). The ALJ pointed out that Plaintiff's representative placed great reliance on Dr. Weiss's November 2007 initial neurological evaluation, which identified a few findings, including tandem ataxia, hypoactive reflexes, and decreased sensation to pinprick in the left L4 and S1 distribution, but, within three months, another examination was performed and all of these neurological deficits had resolved. (Tr. 66, 466-73). February 2008 treatment notes document a normal gait, including tandem gait, and normal sensation and normal reflexes. (Tr. 66, 466-67). The ALJ noted that treatment notes from February 2008 through June 2009, when Plaintiff last visited Dr. Weiss's office, state that there was "no change" from these normal neurological examination findings. (Tr. 66, 458-67).

Further, the ALJ also discussed numerous inconsistencies between Dr. Weiss's February 2012 opinion and the rest of the evidence, including Dr. Weiss's own treatment notes. (Tr. 67). As the ALJ pointed out, it seemed incongruous that the only postural limitation Dr. Weiss opined that Plaintiff could perform even occasionally was balancing, when treatment notes throughout 2009 document Plaintiff's allegations of falling and stumbling. (Tr. 67, 457-78, 634-37). The

ALJ found Dr. Weiss's assessment of limitations on handling, feeling, and other activities using the upper extremities and exposure to various environmental conditions including noise unsupported when Dr. Weiss stated that the limitations he opined were based on Plaintiff's back pain and the treatment notes predating the opinion fail to document any findings that would support such restrictions. (Tr. 67, 457-78, 634-37). The ALJ also found Dr. Weiss's opinion that there was no symptom magnification at odds with the remainder of the evidence, including other physical examinations documenting normal gait, his Morse fall screening of "0," consultative exams where his gait and mobility improved after he left the exam, and the other substantial evidence in the record that did support symptom magnification. (Tr. 67, 637).

Substantial evidence also supports the ALJ's finding that Dr. Weiss's June 2016 opinion was entitled to little weight. (Tr. 67-68). In June 2016, Dr. Weiss opined that Plaintiff had slightly different but still disabling physical limitations. (Tr. 67-68, 634-37, 750-53). Dr. Weiss cited the "medical findings that support this assessment" that Plaintiff had "constant low back pain that radiates into bilateral . . . lower extremities. [Plaintiff] ambulates with a cane, stumbles frequently and falls. Constant thoracic pain radiating into low back. [Plaintiff] is very fatigue[d] due to inability to sleep."

In her decision, the ALJ cited the inconsistencies regarding Plaintiff's ability to perform postural activities, which undermined Dr. Weiss's opinion. (Tr. 68, 750-53). The ALJ noted that Dr. Weiss gave postural limits that differed from his 2012 opinion, opining that Plaintiff could stoop, crouch, and kneel occasionally, despite previously opining that Plaintiff could never do these activities at all and noting more severe findings and complaints. (Tr. 68, 634-37, 750-53). The ALJ also pointed out that Dr. Weiss opined that Plaintiff could never balance, when previously he opined that Plaintiff could balance occasionally, even though there was no

discernible difference between Plaintiff's reports of falls in 2009 and 2014. (Tr. 68, 634-37, 750-53).

The ALJ found it more significant that Dr. Weiss's examination findings were the only evidence documenting any significant neurological findings and were at odds with the substantial weight of the evidence. (Tr. 68). The ALJ noted that, not only did Dr. Weiss's findings deviate from the exams of all other treating and examining doctors, his progress notes from 2007 to 2009 initially reflected similar neurological findings that suddenly resolved at the second exam within a three month period, which demonstrates incongruent and unexplained fluctuations in terms of the clinical findings for Plaintiff among his own progress notes and undermines the reliability of Dr. Weiss's opinions. (Tr. 68).

Further, the ALJ pointed out that Dr. Weiss's opinion and findings conflict with the record as a whole, including Dr. Chandra's treatment notes indicating that Plaintiff reported no history of falls or gait abnormalities in 2012, 2013, or 2014 and Plaintiff's statements at Holmes Regional Hospital in 2014, in which he denied use of an ambulatory aid or any recent falls and his gait was described as steady. (Tr. 68, 692-708). Throughout the decision, the ALJ cited numerous other physical examination findings and denials of symptoms that were at odds with Dr. Weiss's opinion. (Tr. 25-68). For example, in 2010 and 2013 Plaintiff's gait was normal. (Tr. 35). In 2009, Dr. Vara noted largely normal examination findings. (Tr. 40, 491-92). In 2010, Dr. Cooper found full strength and normal muscle tone in all extremities, intact sensation, and no evidence of muscle atrophy. (Tr. 41, 538-39). In 2011, while seeking emergency treatment for a headache, Plaintiff denied back pain and neurological symptoms such as difficulty walking, tingling, or numbness. (Tr. 43, 599-622). At that time, a physical examination demonstrated a full range of motion and non-tender extremities, and Plaintiff even underwent a lumbar puncture to rule out

meningitis without any mention of back pain in the records. (Tr. 43, 599-633). In 2012, Dr. Mignogna's examination revealed full strength in both legs and negative straight leg raise testing. (Tr. 44-45, 639-41). The ALJ also noted the absence of any medical treatment for falls or documentation of any fall injuries. (Tr. 35). Thus, the ALJ cited good reasons, supported by substantial evidence, for declining to give Dr. Weiss's 2016 opinion controlling weight and instead determining that it merited only little weight. (Tr. 65-68).

As to Plaintiff's contention that the ALJ failed to provide a rationale for according great weight to Dr. Mignogna's opinion, but ignoring Dr. Mignogna's opinion that Plaintiff requires the use of a cane to ambulate, the Court finds this argument without merit. In her decision, the ALJ specifically addressed the record pertaining to Plaintiff's usage of a cane. The ALJ explained that the record did not reflect that Plaintiff had a history of using a cane or medical need for a cane. (Tr. 64-65). Aside from his presentation at consultative exams, Plaintiff's treating doctors did not note his use of a cane or consistently note any gait abnormalities, and he even denied falls or gait disturbance to his cardiologist in 2011, 2012 and 2013. Dr. Pinksy, a doctor from Brevard Health, and Dr. Chandra, Plaintiff's cardiologist, specifically noted his gait was normal during exams in August 2010 and July 2013. (Tr. 589). In September 2014, Plaintiff had a fall risk screen at Holmes Regional Hospital, and it was "0" (Tr. 703). This score was based on several factors, including Plaintiff's normal gait and his statements denying any history of falls in the last three months, any use of an ambulatory device, and any risk for falling. (Tr. 703). Additionally, Plaintiff was observed "ambulating without difficulty" and with a steady gait just five months after Dr. Weiss recommended he use a cane ''to avoid falls" because he claimed to be chronically falling. (Tr. 671, 703, 709). Notably, as much as the claimant reported to Dr. Weiss that he had falls, Dr. Weiss never documented observing any objective evidence of falls, such as

injuries or trauma (e.g. ecchymosis) even on occasions when the claimant reported falling the day before his visit (Tr. 459). Thus, the ALJ adequately explained why a medical need for a cane was contradicted by substantial evidence in the record and why she therefore rejected those portions of the medical opinions, including the opinion of Dr. Mignogna, which provided for the use of a cane. (Tr. 64-65).

As noted above, substantial evidence "is such evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). Here, the ALJ's thorough decision, spanning nearly fifty pages, set forth substantial evidence supporting her decision that Plaintiff was not disabled. Plaintiff has failed to demonstrate that the ALJ committed reversible error.

**III.    Conclusion**

The decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 21, 2018.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties